IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 16-cv-03172-RM-STV

LARRY JOHNSON, an individual,

    Plaintiff,

v.

ROCKY'S AUTOS INC., a Colorado corporation,

    Defendant.

___

**ORDER**
___

    Plaintiff Larry Johnson brings claims against his former employer, Defendant Rocky's Autos Inc., for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981.  Plaintiff also asserts a single cause of action for battery.  Before the Court is Defendant's motion for summary judgment (ECF Nos. 31, 33) and Plaintiff's motion for partial summary judgment (ECF Nos. 36, 37).  For the reasons discussed below, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for partial summary judgment.

**I.    BACKGROUND**

    Plaintiff worked for Defendant as a car salesman during two different time periods.  (ECF No. 45-1, Sep. Statement of Undisputed Mat. Facts, ¶ 1; (AF)[1] ¶¶ 1, 8.)  Plaintiff first worked for Defendant from October 23, 2013 to October 24, 2014, when he was terminated.  (*Id.* at (AF) ¶

---

[1] "(AF)" refers to Plaintiff's additional facts included in Defendant's Separate Statement of Undisputed Material Facts.

1.) After the October 24, 2014 termination, Plaintiff filed his first Charge of Discrimination with the Equal Employment Opportunity Commission on August 13, 2015. (ECF No. 43-2, Charge of Discrimination.) Plaintiff's charge alleged retaliation based on race and age. (*Id.* at 1.) Defendant responded to the charge asserting that it terminated plaintiff for insubordination, refusing to follow instructions, failing to pre-qualify customers, and failing to increase his "demonstration drive" percentages. (ECF No. 43-12, Def.'s Resps. to EEOC Charge at 1.) On October 28, 2015, Plaintiff and Defendant entered a settlement agreement to resolve the first charge. (ECF No. 43-4, Mediation Settlement Agreement.)

As part of the release of his claims against Defendant, Plaintiff was rehired to work as a salesman effective October 28, 2015. (*Id.* at 3, ¶ 2.) Problems started with Plaintiff's second stint of employment when, on November 21, 2015, he complained to his supervisor that customer referral practices were unequally distributed among his sales team. (ECF No. 45-5, Johnson Dep. at 43:6-11, 43:20–44:3.) Plaintiff was the only African-American member of his four-person sales team. (ECF No. 31-5, Def.'s Rog. Resps. at 4-6, 10; ECF No. 45-3 at 5.) Later in the day on November 21, 2015, after he made his complaint about the unequal referral practices, Plaintiff's supervisor approached him and struck him on the back. (ECF No. 43-17, Johnson Aff. at 2, ¶¶ 11-15.) Two days later, on November 23, 2015, Defendant issued a pair of Employee Warning Notices to Plaintiff for attitude and insubordination. (ECF No. 31-10, Def.'s Init. Disclosures at 4, Empl. Warning Not.) Another Employee Warning Notice was issued to Plaintiff on November 25, 2015 for earlier violations that occurred between November 21, 2015 and November 23, 2015. (*Id.* at 5.) The November 25th notice cited Plaintiff's violations as conduct, attitude, and insubordination. (*Id.*) On November 28, 2015, Defendant drafted three

more Employee Warning Notices for attitude, insubordination, and substandard work. (*Id.* at 6-7.) On December 3, 2015, Defendant terminated Plaintiff. (ECF No. 45-1 at ¶ 12.) The termination notice given to Plaintiff stated four specific reasons for the termination: (1) failure to comply with management directives; (2) no team leader/manager wants Plaintiff on their team; (3) Plaintiff continues to be abusive/condescending toward management; and (4) insubordination. (ECF No. 31-12, Def.'s Init. Disclosures at 4, Empl. Warning Not.; *see also* ECF No. 45-9 at 2-3.) Although Plaintiff signed the termination notice, above his signature he wrote: "No I don't understand this!!!" (ECF No. 31-12 at 4.)

Following his second termination, Plaintiff filed another Charge of Discrimination with the EEOC on December 21, 2015. (ECF No. 1-1.) The second charge alleges retaliation on the basis of age and race. (*Id.*) However, Plaintiff's Complaint alleges only race-based claims. (*See* ECF No. 1.) The EEOC issued a Notice of Right to Sue on September 28, 2016. (ECF No. 1-2.) Plaintiff filed his Complaint in this court on December 23, 2016. (ECF No. 1.)

## II.  LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569–70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Once the moving party

meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).

"Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016) (citations and quotations omitted). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Id.*

### III.   ANALYSIS

Plaintiff's Complaint asserts four causes of action. Three are based on Title VII and 42 U.S.C. § 1981: (1) "discharge retaliation"; (2) "retaliation in terms and conditions"; and (3) "retaliation breach of mediation agreement". (ECF No. 1.) Plaintiff's fourth cause of action is for battery. (*Id.*) Defendant moves for summary judgment on all four claims. (ECF Nos. 31, 33.) Plaintiff seeks partial summary judgment that Defendant is liable on the retaliation claims. (ECF Nos. 36, 37.)

Plaintiff presents no direct evidence of retaliation. Where there is no direct evidence of retaliation, the familiar *McDonnell Douglas* burden-shifting test applies to each of Plaintiff's Title VII and 1981 claims. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of retaliation.

*Id.* If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, nondiscriminatory basis for its employment decision. *Id.* If Defendant does so, the inference of discrimination or retaliation disappears and the burden shifts back to Plaintiff and he must offer evidence that Defendant's nondiscriminatory reason was merely pretext. *Id.* The Court will address each portion of the *McDonnell Douglas* test below.

### A. Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) a causal connection existed between the protected activity and the materially adverse action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

#### 1. Prima Facie *Burden*

Plaintiff argues that he was retaliated against for engaging in protected activity. The protected activity appears to be complaints about workplace conditions and settling a prior discrimination complaint. The Court begins with the complaints regarding workplace conditions.

Plaintiff asserts that he made two complaints to management which are protected activity: (1) he complained about unequal treatment in receiving customer referrals; and (2) he complained about a coworker striking him on the back. (ECF No. 43 at 2-12.) Defendant counters that Plaintiff fails to meet his *prima facie* burden because a vague complaint about unequal treatment with respect to customer referrals is not protected activity. (ECF No. 31-1 at 8; ECF No. 44 at 4-7.) Defendant argues that the same is true for the battery complaint. (ECF No. 31-1 at 10; ECF No. 44 at 6-7.)

As an initial matter, because Defendant disciplined and ultimately terminated Plaintiff, the Court concludes for purposes of the motions that he suffered a materially adverse employment action, which satisfies the second element. Nonetheless, Plaintiff must still establish protected opposition that is causally connected to the materially adverse action. "[O]pposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated." *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984). But "[a]n employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition." *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009) (emphasis in original) (citation omitted). An employee must present evidence "that he made the basis of his [complaint] known to his supervisors." *Id.* at 1082. In other words, Plaintiff must have notified the Defendant of his belief that their actions constituted improper discrimination based on his race. *Id.*

Turning first to the complaints about unequal referrals, Defendant notes that the lack of evidence that Plaintiff's complaint in this regard advised Defendant that the referrals were being made unequally *because of race*. The Court agrees. Plaintiff's Complaint in this matter (ECF No. 1) makes no such claim. Instead, it asserts simply that Plaintiff complained about "unequal referrals." (ECF No. 1 at ¶¶ 21-24.) The Court has reviewed the deposition testimony provided by the parties, and it fails to establish anything beyond a complaint about numerical inequality–not race-based inequality. (ECF No. 44-3 at 11-14.) In his deposition, Plaintiff did not even testify that the referrals themselves were being made on a race-based basis–just that they were not equal. (*Id.* at 12-13.)

6

Faced with this, Plaintiff filed an affidavit (ECF No. 43-17; ECF No. 36-16) from him that presumably was meant to close the evidentiary gap. It fails to do so. Repeatedly, the affidavit uses curious sentence structure to invite the Court to reach an evidentiary conclusion nowhere stated. The affidavit states that Plaintiff complained about referrals not being made on an equal basis; Plaintiff was the only African-American on his supervisor's team; and Plaintiff's supervisor gave the referrals to other team members instead of him. (ECF No. 43-17, Johnson Aff. at 2, ¶¶ 8-12; ECF No. 36-16, Johnson Aff. at 2, ¶¶ 8-12.) Essentially, Plaintiff asks the Court to infer that, because he was African-American and complained, he informed his supervisors that he was complaining of employment discrimination *because of* his race. The Court will not make such a leap. Instead, the Court finds that Plaintiff's generalized complaints about the unequal distribution of referrals failed to inform Defendant that he was opposing discrimination prohibited by federal law. *Zokari*, 561 F.3d at 1081-82; *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (concluding that "[g]eneral complaints about company management and one's own negative performance evaluation will not suffice."); *Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002) (explaining that to oppose plain vanilla rude or unfair conduct is not to oppose conduct made an unlawful practice by Title VII).

If, for some reason, the Court were to construe Plaintiff's affidavit more broadly than its words state and read it as asserting a complaint was made to Defendant about race-based referrals, the Court would nonetheless disregard the affidavit (as Defendant requests) as being a "sham." Plaintiff gave the following testimony at his deposition:

7

> Q. Would you tell me what racial discrimination you believe you were subjected to. And I don't mean to be redundant. Are we talking about your termination?
> [Plaintiff's Answer.] Yes.
>
> Q. Okay. Anything else?
> [Plaintiff's Answer.] No.
>
> Q. Okay. Could you describe the disparate treatment because of your race that you're talking about? Is that the termination also, or is it something else, sir?
> [Plaintiff's Answer.] Termination.
>
> \* \* \* \* \*
>
> Q. Okay. Do you know if referrals were being given to other team members equally? Not you, obviously, but the other members of your team, were all the referrals being given equally between them; do you know?
> [Plaintiff's Answer.] I just know that Marwan Alshaer told me that he was not going to give Larry Johnson any of the referrals or any customers that he passed on to other sales team members on my team. He was not going to give Larry Johnson any.
>
> Q. And so you don't know if he was giving the referrals equally to the other team members?
> [Plaintiff's Answer.] I just know that he was giving referrals to other team members, but none to Larry Johnson.

(ECF No. 45-5, Johnson Dep. at 37:3-14, 45:5-18.) Plaintiff's affidavit submitted in response to Defendant's motion and in support of his own, states:

> On or about November 21, 2015, following the open door policy, I complained to the Company President, David Rothrock, that my manager, Marwan Al-Shaer, was not making customer referrals to the sales team members on an equal basis.
>
> I complained that I, the only African-American on Alshaer's team, was not given any customer referrals; instead he gave the referrals to other team members.
>
> I complained that the playing field was not level and that I, the only Black on the team, was being singled out for different treatment.

(ECF No. 43-17, Johnson Aff. at 2, ¶¶ 8-12; ECF No. 36-16, Johnson Aff. at 2, ¶¶ 8-12.)

The Tenth Circuit has acknowledged that there is authority for the proposition that "[i]n determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (citations omitted). The *Franks* court ultimately held that "[i]n assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Id.* To determine whether the affidavit should be considered a sham, the relevant factors are "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.*

First, Plaintiff's counsel was present to question him at the deposition. Neither party apprises the Court as to whether Plaintiff's counsel did, in fact, question Plaintiff at the deposition. Notwithstanding, Plaintiff offers no testimony from the deposition to supplement his answers quoted above–that the only racial discrimination he claims against Defendant involves his termination. (ECF No. 45-5, Johnson Dep. at 37:3-14.) Plaintiff did not testify that his supervisor gave referrals to other team members *because of* race or age–only that his supervisor did not give referrals to him. (*Id.* at 45:5-18.) Moreover, Plaintiff reviewed and made twenty-one changes to his deposition transcript on August 22, 2017–none of the changes were substantive. (ECF No. 31-4 at 31-33.) Plaintiff had an opportunity to supplement or clarify his deposition testimony, but did not. Thus, this factor weighs against Plaintiff.

9

Second, because the statements at issue are Plaintiff's own complaints to his supervisors, he had access to the pertinent information at the time of his deposition.

Third, nothing suggests, and Plaintiff does not argue, that he was confused during his deposition. Plaintiff answered with an unequivocal "no" when asked if he was subjected to any discrimination other than his termination. (ECF No. 45-5, Johnson Dep. at 37:3-9.) When asked again whether there was any discrimination other than his termination, Plaintiff simply responded, "termination." (*Id.* at 37:10-14.) The Court disregards Plaintiff's affidavit as attempting to create a sham issue of fact because it contradicts his deposition testimony and the *Frank* factors weigh against him. Either there is no evidence of a complaint about inequitable referrals based on race, or the evidence which does exist is a sham. Either way, Plaintiff fails to make out a *prima facie* case.

Turning to any complaint about a battery, Plaintiff cites no authority to support that reporting an alleged battery is opposition protected by Title VII or § 1981. (ECF No. 36 at 8-11.) And Plaintiff offers no evidence that the supervisor striking him on the back was because of a protected status. For these reasons, Plaintiff again fails to establish a *prima facie* case for retaliation.

The analysis with respect to retaliation for mediating a prior charge of discrimination and entering into a mediation agreement whereby Plaintiff was rehired fares no better. Plaintiff cites no authority to suggest that settling an earlier dispute is somehow protected activity separate and apart from the alleged discrimination giving rise to the mediation or settlement.

10

Although the Court's analysis could end here due to the failure to establish a *prima facie* case, the Court will, for the sake of completeness, assume a *prima facie* case and continue the *McDonnell Douglas* analysis.

### 2. *Legitimate, Nondiscriminatory Reasons for Adverse Employment Action*

Assuming Plaintiff could establish his *prima facie* case and shift the burden to Defendant, Defendant has come forward with legitimate, nondiscriminatory reasons for Plaintiff's termination. Defendant presents evidence that Plaintiff was fired for not being a team player, having a bad attitude, insubordination, and failing to comply with management and company directives. (ECF No. 31-10 at 4-7; ECF No. 31-12 at 4; ECF No. 36-19 at 1-5.) The Court finds that these explanations are legitimate, nondiscriminatory bases for Plaintiff's termination.

### 3. *Evidence of Pretext*

Accordingly, the burden shifts back to Plaintiff to show that the proffered bases are a pretext for retaliation. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). In order to establish a genuine issue of material fact as to pretext, a plaintiff must produce evidence that would allow a reasonable juror to find that the defendant's nondiscriminatory reason is "unworthy of belief." *Id*. A plaintiff can meet this burden with "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Argo*, 452 F.3d at 1203 (internal quotation and citation omitted). "The plaintiff must show by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext *for discrimination*." *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1379 (10th Cir. 1994) (citation omitted and emphasis in original). In determining whether a plaintiff

has shown pretext, the Court must consider the plaintiff's evidence in its totality. *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008).

Here, Plaintiff makes the general argument "that Defendant's reasons are so weak and implausible that a reasonable factfinder could rationally find them unworthy of credence." (ECF No. 43 at 7; ECF No. 36 at 6.) More specifically, Plaintiff contends that pretext should be inferred when the criteria for termination that the employer relies on is entirely subjective in nature, such as, being terminated for not being a team player. (*Id.*) Plaintiff's *arguments* miss the mark because on summary judgment *evidence* matters.

Plaintiff cites *Green v. N.M.*, 420 F.3d 1189 (10th Cir. 2005), to support his argument that Defendant relied on entirely subjective criteria. But in *Green*, the court explained that

> pretext is typically shown in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Id.* at 1193 (citation and quotation omitted).

First, the Court rejects Plaintiff's argument that the concept of being a team player is entirely subjective. In his signed settlement agreement with Defendant, Plaintiff expressly "acknowledges the importance of being a team player[.]" (ECF No. 31-8 at 6, ¶ 4; ECF No. 36-4 at 3, ¶ 4.) It is disingenuous for Plaintiff to now claim that he could not be terminated for failing

to be a team player when he expressly acknowledged the importance of the concept as part of being rehired by Defendant.  In this regard, Plaintiff is inconsistent, not Defendant.

Moreover, in *Green*, the Tenth Circuit explained that pretext can be inferred when the criteria are *entirely* subjective.  *Green*, 420 F.3d at 1195-96 (concluding that an employee was not entitled to an inference of discrimination, in part, because objective as well as subjective factors were used to justify termination).  Here, Plaintiff challenges as subjective, the decision to terminate him for not being a team player. (ECF No. 43 at 7-9; ECF No. 36 at 6-8.)  In other words, Plaintiff challenges only one of the reasons provided in the notice for his termination, leaving multiple objective bases to justify his termination.  As a result, Plaintiff has failed to show he is entitled to an inference of discrimination because Defendant relied, in part, on his failure to be a team player.  *See Green*, 420 F.3d at 1195-96.

Next, Plaintiff points to his own written responses to the various write-up notices received from Defendant.  (ECF No. 43-11.)  At best, these merely elaborate on his statement contained on the Employee Warning Notice: "I don't agree with this."  (ECF No. 43-10.)  Disagreement with Defendant's proffered nondiscriminatory reasons is not evidence of the type of "glaring contradiction" necessary to show pretext.  *Cole*, 43 F.3d at 1380; *see also Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1535 (10th Cir. 1995) (stating "an employer's exercise of erroneous or even illogical business judgment does not constitute pretext."); *DeGraw v. Exide Tech.*, 462 Fed. Appx. 800, 803 (10th Cir. 2012) (unpublished) (finding that evidence of disagreement as to employee's ability to perform job does not demonstrate pretext).  Although the Court acknowledges Plaintiff's disagreement, he merely provides instances where he followed directions: reporting to work on time, moving cars when asked, placing balloons in the

showroom, and sweeping up cigarette butts.  But Plaintiff testified that these things were expected of all salespeople.  (ECF No. 44-3, Johnson Dep. at 147:13–148:9.)  Thus, this is not evidence of pretext or that Plaintiff was terminated because of his race.  And even if Plaintiff sometimes followed directions, Defendant consistently stated that he was terminated for being difficult to work with, citing the following reasons: no team leader or manager wanted Plaintiff on their team (ECF No. 43-15); Plaintiff was abusive and condescending toward management (yelling at a manager); and he was disrespectful, threatening, and insubordinate.  (ECF No. 31-10 at 4-7); *Burrus v. United Tel. Co. of Kan.*, 683 F.2d 339, 344 (10th Cir. 1982) (upholding grant of summary judgment where employer submitted evidence of employee's "continuing attitudinal problems and her inability to work with fellow employees.").

Plaintiff goes on to correctly note that there is a close temporal proximity between his complaints and termination.  (ECF No. 43 at 3-4.)  Although a close temporal proximity may be relied on to establish causation and a *prima facie* case of retaliation, Plaintiff must still show, with admissible evidence, that Defendant's proffered reason for terminating him was pretextual.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  In *Anderson*, the Tenth Circuit concluded that the district court had properly granted summary judgment in favor of the employer.  *Id.* at 1180.  The *Anderson* court explained that even if close proximity was enough to establish a *prima facie* case, "it cannot overcome Defendant's proffered reason for terminating her."  *Id.*  The same result is warranted here because Plaintiff does not present evidence that would allow a reasonable factfinder to conclude that Defendant's reasons are unworthy of belief.  *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1398 (10th Cir. 1997) (concluding that despite a close temporal proximity, the court should uphold "the district court's grant of

summary judgment because plaintiff produced no evidence to rebut the proffered reasons of the employer."). Moreover, as discussed above, the Court finds that Plaintiff never told Defendant that he was opposing discrimination based on his race; therefore, close temporal proximity between an unprotected complaint and a materially adverse employment action lacks a basis for an inference related to race. At the end of the day, Plaintiff neither submits evidence to contradict Defendant's legitimate, nondiscriminatory reasons for termination nor does he connect his race to his termination.[2]

In sum, because Plaintiff fails to raise any factual dispute as to whether Defendant's proffered bases for his termination were pretext for retaliation, his retaliation claims cannot survive summary judgment. *Proctor v. United Parcel Service*, 502 F.3d 1200, 1211 (10th Cir. 2007) (affirming grant of summary judgment where plaintiff failed to show factual dispute as to pretext). Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claims. Plaintiff's motion for partial summary judgment is denied.[3]

**B.     Battery**

Plaintiff concedes that his battery claim was not filed within the one-year statute of limitations proscribed by Colo. Rev. Stat. § 13-80-103(1)(a). (ECF No. 43 at 14.) But Plaintiff asks the Court to equitably toll the statute of limitations with scant explanation as to why. (*Id.*) To establish that Defendant impeded the filing of his battery claim, Plaintiff points to Defendant

---

[2] Plaintiff does not argue that Defendant acted contrary to a company policy or that other similarly-situated employees who violated work rules were treated differently.

[3] The Court adds that Plaintiff's third retaliation cause of action for breach of mediation agreement cannot survive summary judgment for the additional reason that Plaintiff points to no term in the mediation agreement that was breached by Defendant. Defendant was rehired. The agreement did not provide that he could not thereafter be terminated. (*See* ECF No. 43-4.)

disciplining the person who allegedly committed the battery. (*Id.* at 15-16.) How this is an impediment to filing a battery claim is unexplained, and the Court does not find it do be one. As a result, equitable tolling does not apply to save Plaintiff's untimely battery claim because no evidence has been presented to establish that Defendant's actions impeded Plaintiff's right to file a lawsuit. *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996).

And Plaintiff offers no extraordinary circumstance that prohibited him from filing his claim within the statutory period. *See id.* (citing *Hanger v. Abbott*, 73 U.S. 532 (1867) (finding extraordinary circumstances tolling statute of limitations where courts were closed during Civil War); *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947) (holding plaintiff's internment by Japan during World War II tolled limitations period on his claim arising immediately prior to his internment)). At best, Plaintiff appears to argue that his damages will be limited. (ECF No. 43 at 16.) Although true that damages will be limited in nearly every claim barred by a statute of limitations, Plaintiff offers no explanation why this is an extraordinary circumstance. Plaintiff's axiomatic argument regarding his damages being limited if the battery claim is time-barred, does not come close to hitting the extraordinary circumstance mark.

Therefore, Defendant's motion for summary judgment is granted as to Plaintiff's battery claim because it is barred by the statute of limitations.[4]

### IV. CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS Defendant's motion for summary judgment (ECF Nos. 31, 33);

---

[4] Defendant's request for attorneys' fees is denied because Defendant provides no legal basis for the Court to award any such fees. (*See* ECF No. 31-1 at 16.) As for costs, Defendant should consult the Local Rules for guidance as the prevailing party.

(2)     DENIES Plaintiff's motion for partial summary judgment (ECF Nos. 36, 37);

(3)     ORDERS the Clerk to enter JUDGMENT in favor of DEFENDANT and close this case; and

(4)     VACATES the Order Setting Case for Trial (ECF No. 50).

DATED this 22nd day of May, 2018.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge